## STEWART & HUDSON vs. COLE & SON.

[ACTION ON ATTACHMENT BOND.]

1. *Attachment; what state of facts will not authorize issuance of.*—A shipment of cotton from this State by the usual route, for the honest purposes of trade, by a citizen of this State, who has the means in this State sufficient to pay all debts, will not justify the issuance of an attachment against his estate, on the ground that he "is about to remove his property out of the State, so that the plaintiff will probably lose his debt, or have to sue for it in another State."—Rev. Code, § 2928, cl. 5.

2. *Same; action against bondsmen; what necessary to defense of.*—A party sued upon the attachment bond, in such a case, for the wrongful or vexatious suing out of the attachment, must be prepared to show in his defense that one of the causes for attachment required by the Code, existed at the issuance of the attachment.—Rev. Code, §§ 2930-31.

3. *Abstract charge, refusal of; not ground for reversal.*—A judgment will

not be reversed for an abstract charge, though its refusal would have been error, had it not been abstract.

APPEAL from the Circuit Court of Morgan. Tried before Hon. JAMES S. CLARK.

The appellees, Cole & Son, who were merchants in Blount county, Alabama, became indebted in the spring of 1869, to Ewin, Pendleton & Co., in various sums. On the 14th day of February, 1870, Ewin, Pendleton & Co., on the ground that Cole & Son "were about to remove their property out of the State of Alabama, so that the plaintiff in attachment would probably lose their debt, or have to sue for it in another State," sued out an attachment, &c., which was levied upon sixteen bales of cotton belonging to the appellees, which were *in transitu* to Memphis, Tennessee, to find sale and a market there; and thereupon the appellees brought this action against two of the obligors upon the attachment bond, to recover damages for the breach thereof.

The defendants pleaded "not guilty," and a special plea that states in substance that the attachment was issued according to law and for grounds authorized by law, and for probable cause and not vexatiously, and without malice, and that defendants are merely sureties on said bond, and two other pleas not necessary to be further noticed.

It is not stated upon what pleas issue was joined, but the judgment entry recites that "issue being joined," &c.

On the trial it was proved, against objection of defendants, that it was the usual course of trade for persons living in Blount county to ship cotton via Decatur, Ala., to Memphis, Tenn., for sale, as was done in the case of the cotton levied on; and the plaintiffs, against the objection of the defendants, were permitted to testify that at the time the attachment was sued out and levied, the plaintiffs had more than sufficient property in the State of Alabama, (exclusive of the cotton levied on, and all exemptions allowed by law,) to pay off all their debts, including the one due Ewin, Pendleton & Co. But of what this property consisted, or where it was, was not stated. The court overruled the defend-

ants' objection to the admission of this testimony and permitted it to go to the jury, and defendants duly excepted.

The defendants offered testimony going to show that Cole & Son had repeatedly promised the attaching creditors to pay the amounts due, and had invariably broken these promises; that they had changed their trade from Nashville, where they became indebted to the attaching creditors, and afterwards entirely ceased to make purchases there, and very shortly after this commenced trading in Memphis, Tenn. There was no evidence whatever tending to show malice on the part of the defendants, or the attaching creditors. This was, substantially, all the evidence necessary to a proper understanding of the points decided.

The court, at the request of the plaintiffs, charged the jury that, "if they believed, from the evidence, that when the attachment was sued out Cole & Son had sufficient property (other than the cotton) of greater value, and more than sufficient to pay all their debts (after deducting the exemptions allowed by law,) then the shipment of the cotton without the State did not authorize the issuance of the attachment.". To this charge defendants excepted.

The defendants also excepted to the refusal of the court to charge the jury, at their request, "that they can not find that there was malice in suing out the attachment, unless they believe there was malice against the persons of the plaintiffs."

There was a verdict and judgment for the plaintiffs, and the defendants appeal and here assign as error—

. 1st, The charge given.

2d. The refusal to give the charges asked.

3d. The admission of the testimony on the part of plaintiffs, to which the defendants objected.

D. P. LEWIS, and SAM'L MORROW, for appellant.—1. The charge given below, on motion of plaintiff, tended to mislead the jury and was unfavorable to a verdict on all the evidence. The effect of the charge was to exclude from the consideration of the jury every thing else, except the question, whether defendants in the attachments owned

Stewart & Hudson v. Cole & Son.

other property than that about to be sent out of the State, exempt from legal sale, sufficient to pay their debts. They were, by the charge, led away from the enquiry, whether the attaching creditors would "probably lose their debt, or have to sue for the same in another State."

Again: the proposition of law can not be admitted that a defendant may send out of the State what amount of his property he pleases, free from liability to attachment, provided he can prove on trial that he has sufficient left to pay his debts, that is, liable to execution. Is a creditor to be required, under all circumstances, to have a correct inventory of the property of his debtor? And shall his liability to suit for attachment depend on the accuracy of the inventory which he may have?

The principle stated in Drake on Att. § 69, is under the law of Louisiana, which does not authorize an attachment for the cause specified in our Rev. Code, § 2927, (5). See Drake, appendix for Louisiana statute.

The case in Drake, § 70, Illinois, is not altogether unlike our own, and that in § 71, in Tennessee, is dissimilar.

The charge should not have omitted to direct the attention of the jury to the probability of the creditor losing his debt, or having to sue for the same in another State. The charge ignored all the evidence tending to show fraud.

The charge invaded the province of the jury, and not only dwarfed, but absolutely ignored the probability of losing the debt, as well as all other grounds of attachment.

Creditors cannot be supposed to know what property is owned by debtors with accuracy. Debtors may own property in distant parts of the State. In commercial life, punctuality is much more looked to than means in the possession of the debtor.

WALKER & BRICKELL, contra.—The object of the statute is, to protect the creditor against a loss of his debt, or the inconvenience of a suit in another State, for its collection. If the debt is not imperiled by the removal of the property, or the danger of a suit in another forum for its recovery is

42

not incurred, the statute does not authorize the issuance of an attachment. When the debtor has property other than that which is about being removed, subject to execution, accessible and sufficient for the payment of his debt, there can be no reason for suing out an attachment; no reason for not confining the creditor to the ordinary legal remedies.—Drake on Attachment, §§ 69–71; *Jones v. Lawrence,* 36 Ala. 618.

2. The evidence that the shipment of the cotton from Decatur to Memphis was the usual course of trade for persons residing in Blount county, where appellees resided, was properly admitted. Taken in connection with the evidence that appellees had property, other than the cotton, subject to execution, of sufficient value to pay all their debts, it repelled any unfavorable inference which might or could be drawn from the fact that they were sending it out of the State. It tended to repel the existence of probable cause, or a reasonable belief in the minds of the attaching creditors of the existence of a probable cause, for the issuance of the attachment. It showed that in the shipment of the cotton there was nothing unusual or suspicious. As all parties are supposed to contract in reference to the customs and usages of trade prevailing where they reside, or the contract is to be performed, this evidence would create the just presumption that the creditors could not, when their debts were contracted, have believed or expected that cotton of which their debtors might become the owner would remain in their possession in Alabama, but would be shipped beyond the State, and thus tend to show that the shipment of the cotton was by them made a mere pretext for a wrongful act.—Drake on Attachment, §§ 69–71.

3. The charge given by the court asserted a correct legal proposition.—Drake on Attachment, §§ 69–71; *Jones v. Lawrence,* 36 Ala. 618.

4. The charge first asked by the appellants was properly refused. It could have served no other purpose than to mislead the jury. If it had been given, the jury would probably have supposed that the plaintiff in attachment must have borne some hatred to the persons of the defend-

ants; must have intended to do them some physical injury through the instrumentality of the attachment.

PETERS, J.—This is an action for damages founded on an attachment bond. The appellees in this court were the plaintiffs in the court below. The cause was tried by a jury. There was a verdict for the plaintiffs for one hundred dollars, and judgment was rendered for this sum and costs. From this judgment the appellants, who were the defendants in the court below, bring the case here by appeal.

A creditor who seeks to proceed in the collection of his debt by the use of the harsh process of attachment, undertakes to show that some one of the causes which would authorize the issuance of an attachment "exists."—Revised Code, §§ 2928, 2930. If he fails to do this, the attachment is wrongfully sued out, and if the property of the defendant is seized under authority of process thus issued, it is in effect a trespass and an illegal invasion of the defendant's rights of property; for which the party causing the attachment to be sued out is responsible to the amount of the damages inflicted.—*Kirksey v. Jones*, 7 Ala. 622, 626; Rev. Code, § 2931. In case there is no malice, when the suit is on the attachment bond, as is the case here, the recovery must be confined to the actual damages; but if there is malice on the part of the attaching creditor against the debtor, then the jury may go beyond the actual damages and give smart money, by way of punishment for the malicious as well as the wrongful use of the process. *Floyd v. Hamilton*, 33 Ala. 237, 235. The ground relied upon to justify the attachment in this case was the fifth of those enumerated in the Revised Code, which is this: " When the defendant is about to remove his property out of the State, so that the plaintiff will probably lose his debt or have to sue for it in another State."—Rev. Code, § 2928, cl. 5. There was evidence tending to show that the defendants in the attachment suit, who are the plaintiffs in the suit on the bond, had sufficient means in this State to pay all their debts; that they were merchants, doing

business in the county of Blount in this State, and that Decatur was their shipping point on the railroad. It was also shown that the cotton attached was intended to be sent out of this State, to the city of Memphis, in the State of Tennessee, where the owners traded, for the purpose of finding a market there, and this was the usual course of trade from said county of Blount. Upon this evidence, among other things, the court charged the jury on the plaintiff's motion, that, "the shipment of the cotton without the State did not authorize the issuance of an attachment." There was no error in this charge. If the purpose of the shipment of the cotton was for the honest ends of trade, its shipment from the State for this purpose could not be prevented by attachment. The removal can only be prevented in this way when the plaintiff will probably lose his debt thereby, or have to sue for it in another State. All these circumstances are required to exist before the issuance of an attachment will be justified.—Rev. Code, § 2928, cl. 5, § 2930.

The charge asked by the defendants in the court below, in reference to malice, was abstract. There was no pretense in the proof that malice was relied on to increase the damages. The charge, had there been evidence to support it, would have been a proper charge. The malice in such a case which may be given in evidence to increase the damages, should be malice against the defendant in the attachment suit. But no evidence of this sort is shown in the record.

I am unable to perceive that the other objections raised on the assignment of errors are well founded.

The judgment of the court below is, therefore, affirmed.